FIFTH DIVISION
July 30, 2010

Nos. 1-08-2643 and 1-08-2644, Consolidated

| | | |
|---|---|---|
| KEVIN PETERSEN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| JANET KELLOGG PETERSEN, | ) | Honorable |
| | ) | Mark Lopez, |
| Respondent-Appellee. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the opinion of the court:

Respondent-appellee, Janet Petersen, filed a petition in the circuit court of Cook County requesting an allocation of the college expenses for the three children of the dissolved marriage between Janet and her former husband, petitioner-appellant, Kevin Petersen. Kevin appeals from an order requiring him to pay 75% of all past, present and future college expenses of his three children. Kevin contends the trial court erred when it ordered him to pay 75% of his children's college expenses and erred when it ordered him to pay expenses that predate the filing of Janet's petition for allocation of expenses. For the reasons set forth below, we affirm in part and reverse in part.

BACKGROUND

Kevin and Janet were married on September 1, 1983, in Pacific Palisades, California. Three children were born of the

marriage: Gregory, born August 12, 1984; Ian, born October 21, 1985; and Ellis, born April 19, 1989.

A judgment for dissolution of marriage was entered on August 27, 1999. At the time of the judgment both parties were 44 years old. Janet, who has undergraduate degrees in psychology and nursing, was employed part-time as a hospice nurse. Kevin, who has a medical degree, was employed as a general surgeon.

The judgment for dissolution awarded Janet sole custody of the children. Kevin was ordered to pay child support. With respect to the college expenses of the children, the judgment provided:

> "The Court expressly reserves the issue of each party's obligation to contribute to the college or other education expenses of the parties' children pursuant to Section 513 of the [Illinois Marriage and Dissolution of Marriage Act]."

The children were not attending college at the time the judgment of dissolution was entered. Shortly after the dissolution, Kevin was adjudicated bankrupt.

On May 7, 2007, Janet filed a petition requesting an allocation for college expenses for the children. The trial

1-08-2643)
1-08-2644)Cons.

court conducted evidentiary hearings.

Janet testified that Gregory, the oldest child, started college at Cornell University in 2002 and graduated in 2006. At the time of the hearing, Ian was 21 years old and had attended Wake Forest University for his first year of college in 2004-05 and then transferred to the University of Texas. The youngest child, Ellis, was 18 years old and in his first year of college at the California Polytechnic State University.

Janet testified that she had not spoken to Kevin since 2002. Janet testified she sent a letter to Kevin in July 2002 listing the expenses Gregory would incur by attending Cornell. She testified that she never received a response from Kevin to her letter.

Janet financed Gregory's tuition and expenses with loans. She paid off the loans for Gregory's first year with money she received under the judgment for dissolution. Janet also took out loans for Ian's and Ellis's educations.

Kevin testified that he had not received notification from Janet regarding the children's college plans, including the 2002 letter.

Kevin testified that his income was $94,000 in 2002. The parties stipulated that Kevin's income reported on his IRS 1040

1-08-2643)
1-08-2644)Cons.

form for 2003 was $180,687; in 2004 he earned $181,939; in 2005 he earned $220,314; and in 2006 he earned $294,563. Kevin owns two companies – Summerlin Surgical Associates, which had average monthly gross receipts of $63,600 from January 2007 through July 2007, and No Insurance Surgery MC, which had average monthly gross receipts of $69,100 from February 2007 through July 2007. Janet's income for 2003 was $30,170; in 2004 she earned $34,955; in 2005 she earned $35,106; and in 2006 she earned $40,268.

On April 4, 2008, the trial court ordered Kevin to pay 75% of the total of all college expenses for the parties' three children, past, present and future. The trial court reserved the amount due pending a review of Janet's accounting. On June 17, 2008, the trial court issued an order determining the amount due from Kevin was $227,260.68 for past college expenses. On July 15, 2008, Kevin appealed that order. On August 18, 2008, the trial court entered an order requiring Kevin to pay his allocated share of Ian's and Ellis's expenses for the 2008-09 school year in the amount of $46,290.91. Kevin appealed that order on September 15, 2008. Both of Kevin's appeals were consolidated into this joint appeal.

On appeal Kevin argues: (1) the trial court erred when it ordered him to pay college expenses that accrued prior to the

filing of Janet's petition; (2) the trial court erred when it ordered him to pay 75% of the college expenses; and (3) the trial court lost jurisdiction to order payment of Gregory's college expenses since he had already received his baccalaureate degree at the time Janet's petition was filed.

ANALYSIS

I. Retroactive College Expenses

Kevin argues the trial court erred when it ordered him to pay college expenses which were incurred prior to the filing of Janet's petition because the order is a modification of the child support provisions of the 1999 dissolution judgment. Kevin argues Janet's petition should be treated as a modification of the child support order because college education expenses are a form of child support and Janet's petition seeks to modify the existing support order by requiring him to pay college expenses. Kevin further argues that under the provisions of section 510 of the Illinois Marriage and Dissolution of Marriage Act, any modified payment can only be retroactive to the date on which the notice of filing was issued on Janet's petition to allocate expenses. 750 ILCS 5/510, 513 (West 2008).

The trial court held that its April 4, 2008 order for retroactive payments was not a modification of a prior child

support order, holding:

> "[T]here is no order currently in place
> on college contributions which either party
> seeks to modify, rather this petition is the
> first opportunity the Court is presented to
> address the parties' [section] 513
> contribution."

The trial court ordered that Janet should receive credit for section 513 expenses she had already made and be reimbursed by Kevin.

The modification of provisions for maintenance, support, educational expenses and property disposition are generally governed by section 510 of the Act, which states in relevant part:

> "(a) *** [T]he provisions of any
> judgment respecting maintenance or support
> may be modified only as to installments
> accruing subsequent to due notice by the
> moving party of the filing of the motion for
> modification."  750 ILCS 5/510(a) (West
> 2008).

We review *de novo* the construction and application of the

Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/501 *et seq.* (West 2008)).  *Blum v. Koster*, 235 Ill. 2d 21, 29, 919 N.E.2d 333 (2009).  The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature.  *In re Application of the County Treasurer & County Collector*, 389 Ill. App. 3d 398, 401, 905 N.E.2d 953 (2009).  The intent of the legislature is best evidenced by the language of the statute.  *People v. Janas*, 389 Ill. App. 3d 426, 428, 906 N.E.2d 686 (2009).  When the statutory language is clear and unambiguous, we must apply it as it is written, without resort to extrinsic aids of statutory construction.  *Koster*, 235 Ill. 2d at 29.

Petitions for educational expenses of nonminor children are generally governed by section 513 which states in relevant part:

> "(a) The court may award sums of money out of the property and income of either or both parties *** for the support of the child or children of the parties who have attained majority in the following instances:
>
> > (1) When the child is mentally or physically disabled ***.
> >
> > (2) The court may also make

provision for the educational expenses of the child or children of the parties, whether of minor or majority age, and an application for educational expenses may be made before or after the child has attained majority ***. *** The educational expenses may include, but shall not be limited to, room, board, dues, tuition, transportation, books, fees, registration and application costs, medical expenses including medical insurance, dental expenses, and living expenses during the school year and periods of recess, which sums may be ordered payable to the child, to either parent, or to the educational institution, directly or through a special account or trust created for that purpose, as the court sees fit.

***

The authority under this Section to make provision for educational expenses,

> except where the child is mentally or
> physically disabled and not otherwise
> emancipated, terminates when the child
> receives a baccalaureate degree."  750
> ILCS 5/513 (West 2008).

The legislative intent of section 513 was to furnish a means to provide for the education of nonminor children of divorced parents.  *In re Marriage of Treacy*, 204 Ill. App. 3d 282, 286, 562 N.E.2d 266 (1990).  The imposition of a section 513 order for educational expenses is within the sound discretion of the trial court.  *Treacy*, 204 Ill App. 3d at 286.

In general, courts have viewed section 513 educational expenses as a type of child support:

> " 'Support' is simply a general term that can
> include 'educational expenses' for a child
> who has turned 18 but is still in high
> school.  'Educational expenses' may include
> 'room' and 'board,' just as the more generic
> term, 'support,' may include shelter and
> food.  A court can award 'support' to
> disabled unemancipated children, minor or

nonminor (750 ILCS 5/513(a)(1) (West 2000)), and a particular kind of support, 'educational expenses,' to 'nonminor children' in school (750 ILCS 5/513(a)(2) (West 2000)).' " *In re Marriage of Waller*, 339 Ill. App. 3d 743, 748, 791 N.E.2d 674 (2003).

Section 513 itself states that payment of college expenses is a form of child support for the nonminor children of a marriage:

"(a) The court may award sums of money out of the property and income of either or both parties *** for the *support* of the child or children of the parties who have attained majority in the following instances:

(1) When the child is mentally or physically disabled ***.

(2) The court may also make provision for the educational expenses of the child or children of the parties ***." (Emphasis added) 750 ILCS 5/513(a) (West 2008).

1-08-2643)
1-08-2644)Cons.


Furthermore, in *In re Estate of Champagne*, 153 Ill. App. 3d 560, 505 N.E.2d 1352 (1987), the court noted the interplay between sections 513 and 510 when it held that section 513 educational expenses are intended to be included within section 510(c) the same as a support order and are not terminated by the death of a parent obligated to pay for these expenses. *Champagne*, 153 Ill. App. 3d at 563-64.

The issue in *In re Marriage of Loffredi*, 232 Ill. App. 3d 709, 597 N.E.2d 907 (1992), is whether a dissolution judgment which provides for payment of children's college expenses is modifiable. *Loffredi*, 232 Ill. App. 3d at 711. The court looked to section 502(f), which deals with modification of settlement agreements, and found a provision for college expenses in a settlement agreement is in the nature of child support pursuant to section 502(f) and may be modified. *Loffredi*, 232 Ill. App. 3d at 711.

We also find instructive the holding in *Conner v. Watkins*, 158 Ill. App. 3d 759, 511 N.E.2d 200 (1987). In *Conner*, the trial court stated at a hearing on October 30, 1972, prior to issuing the divorce judgment, that it reserved the issue of child support. *Conner*, 158 Ill. App. 3d at 759-60. The divorce

-11-

judgment did not mention child support. *Conner*, 158 Ill. App. 3d at 762. The court found that no award of support was made in the original judgment and thus concluded:

> "[A]ny subsequent award of support would constitute a modification of the previous judgment, thereby bringing the case within the purview of section 510(a) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 510(a)), which prohibits the award of retroactive support." *Conner*, 158 Ill. App. 3d at 762.

The case at bar is similar to *Conner* in that the trial court did not make an award of child support in the form of educational expenses. Thus, Janet's petition for educational expenses is a modification of the support provisions of the judgment and section 510 requires Kevin's contribution to his children's educational expenses to begin on the notice date of Janet's petition.

Janet claims *In re Marriage of Bennett*, 306 Ill. App. 3d 246, 713 N.E.2d 1278 (1999), is illustrative of a situation where the appellate court affirmed a trial court decision allowing retroactive educational expense payments.

1-08-2643)
1-08-2644)Cons.


In *Bennett*, the mother made the same argument as Kevin, in the case at bar, that educational expenses are a section 510 modification and can only accrue from the date of the petition for educational expenses. *Bennett*, 306 Ill. App. 3d at 247-48. However, *Bennett* is distinguishable from the case at bar in that the educational expenses there occurred while the parties were still married. *Bennett*, 306 Ill. App. 3d at 248. The court stated that under section 15 of the Rights of Married Persons Act (750 ILCS 65/15(a)(1) (West 1996)), creditors could have pursued the mother for all or any portion of the daughter's educational expenses before or after the petition for dissolution was filed because the expenses occurred while the parties were still married. *Bennett*, 306 Ill. App. 3d at 248. As a result, the appellate court in *Bennett* found that the trial court did not err in ordering the mother to reimburse the father for a portion of past educational expenses. *Bennett*, 306 Ill. App. 3d at 247-48.

In this case, unlike *Bennett*, creditors could not have sued Kevin for those expenses under the Rights of Married Persons Act. Therefore, ordering Kevin to make payments that predate the petition was improper.

In this case, we note, the judgement of dissolution of

marriage did not determine whether the parents were required to pay the college expenses of the children (a form of child support), but reserved the issue to be decided in the future. Janet's petition for allocation of college expenses is in the nature of a modification of child support under section 510. Therefore, the trial court erred when it ordered payment of college expenses that predate the notice of filing as provided in section 510(a).  750 ILCS 5/510(a) (West 2008).

## II. Allocation of Educational Expenses

The amount and percentage of allocation of educational expenses will not be overturned absent a finding that the trial court abused its discretion. *Street v. Street*, 325 Ill. App. 3d 108, 115, 756 N.E.2d 887 (2001).  A clear abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Koster*, 235 Ill. 2d at 36.

Section 513(b) instructs:

> "(b) In making awards under paragraph (1) or (2) of subsection (a), or pursuant to a petition or motion to decrease, modify, or terminate any such award, the court shall

consider all relevant factors that appear
reasonable and necessary, including:

(1) The financial resources of both
parents.

(2) The standard of living the
child would have enjoyed had the
marriage not been dissolved.

(3) The financial resources of the
child.

(4) The child's academic
performance."  750 ILCS 5/13(b) (West
2008).

In its analysis of the financial resources of the parents,
the trial court weighed several years of Janet's income listed on
her W2 form, including $40,000 for 2006.  The trial court
considered Kevin's IRS 1040 tax return form for several years
including 2006, which listed his total income at $294,563.

The trial court also noted that Kevin owned two companies,
one, Summerlin Surgical Associates, had an average monthly gross
receipts of $63,600 from January 2007 through July 2007, while
the other, No Insurance Surgery MC, averaged monthly gross

receipts of $69,100 from February 2007 through July 2007. Kevin is the sole shareholder of those corporations.

Kevin claims the trial court failed to consider his inability to pay the educational expenses as portrayed on his income disclosure statement. Kevin claims his monthly living expenses of $35,354 are far greater than his monthly income of $16,000, creating a deficit of $19,359.

However, the trial court noted that Kevin is remarried and pays $16,000 a year in private school tuition for his nine-year-old stepson and approximately $12,000 a year in private school tuition for his four-year-old son, and his two-year-old son attends private school as well.

Thus, based on the total financial evidence presented, and the income disparity between Janet and Kevin, we cannot say that the trial court was being arbitrary, fanciful, or unreasonable when it determined that Kevin should pay 75% of the college expenses.

The trial court found that Kevin is in a far better financial position than Janet to contribute to their children's educational expenses.

The trial court found that Kevin failed to fulfill court

ordered obligations to pay child support, medical insurance premiums and reimbursement of medical expenses while paying over $16,000 a year for the private school of a stepson whom he has no legal obligation to support, along with $12,000 for his four-year-old's private schooling.

The trial court considered the record in its entirety when it found Kevin should pay 75% of all section 513 expenses while Janet is responsible for the remaining 25%. Though, as previously discussed, the trial court erred in finding that Kevin should pay section 513 expenses that accrued prior to the filing of Janet's petition.

Next Kevin argues that the trial court ruling in the case at bar is unjust because he did not receive notice that his children were entering college and the costs involved.

While we note that the record shows that there was very little contact between Janet, the three boys and Kevin since the divorce, as the trial court noted, Janet testified that Kevin will not communicate with her. Janet testified that she has sent letters to Kevin regarding child support, medical expenses, medical insurance payments and that he usually does not respond. In addition, Kevin testified that he was aware that his children

-17-

1-08-2643)
1-08-2644)Cons.

were attending college because he was informed by his mother.

Thus, we cannot say that the trial court's ruling is unjust, as Kevin claims, because the divorce judgment alerted him to his potential future responsibility for educational expenses, the record shows he knew his children were enrolled in college and he made no effort to discuss the matter with the children or Janet.

Kevin claims the trial court failed to consider the standard of living the children would have enjoyed had the marriage not been dissolved. The record shows that prior to the divorce Kevin worked as a surgeon and the family lived in an expensive home in Winnetka, Illinois. The record also shows that at the time of the hearing Kevin operated two medical businesses and lived in a $1.6 million home in Nevada. As a result, we cannot say that Kevin would have not been able to afford the college expenses of his three boys had the marriage not been dissolved.

Kevin did not offer an analysis of the financial resources of the children or the children's academic performance. Janet testified that all three boys work in the summers and use their earnings for spending money. The record shows that they live with their mother in Texas in the summers when not attending school. Based on the record before us, we cannot reasonably

1-08-2643)
1-08-2644)Cons.

assume the boys possess the funds to finance their college education on their own.  In regard to academic performance, we have very little information in the record.  Janet claims the children have performed very well academically.  Ian was not accepted to the University of Texas as a freshman but was able to transfer there after a year at Wake Forest University.  Ellis attends the California Polytechnic State University.

Based on the evidence in the record, we cannot say the trial court's ruling is arbitrary, fanciful, or unreasonable, or that no reasonable person would take the view adopted by the trial court.  *Koster*, 235 Ill. 2d at 36.  Therefore, we cannot say  the trial court abused its discretion when it required Kevin to pay 75% of his children's college expenses.

Kevin also claimed the trial court lacked jurisdiction to require him to pay for any educational expenses for Gregory, who had already obtained a baccalaureate degree when Janet filed her petition.  We need not consider this issue because Gregory's college expenses accrued before the filing of Janet's petition and we have determined that under section 510 the court may not order Kevin to pay for educational expenses that predate the petition.

1-08-2643)
1-08-2644)Cons.


CONCLUSION

For the foregoing reasons, we reverse in part and affirm in part the June 17, 2008, order of the trial court and remand this cause for further proceedings to determine the amount due from Kevin for college expenses, consistent with this order.  We affirm the August 18, 2008, trial court order.

Affirmed in part and reversed in part; cause remanded.

TOOMIN, P.J., and FITZGERALD SMITH, J., concur.